UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SALLY M. TORREZ,<br><br>    Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL,<br><br>    Defendant. | Case No. 17-cv-01586-JST<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTIONS FOR SUMMARY JUDGMENT, AND REMANDING FOR ADDITIONAL PROCEEDINGS**<br><br>Re: ECF Nos. 12, 15 |

Plaintiff Sally Torrez appeals Defendant Social Security Commissioner Nancy Berryhill's[1] final decision denying her application for disability benefits. Before the Court are the parties' cross-motions for summary judgment. ECF Nos. 12, 15. The matter is deemed fully briefed and submitted without oral argument pursuant to Civil Local Rule 16-5. The Court will grant Torrez's motion in part, grant the Commissioner's cross-motion in part, and remand the case for further proceedings.

**I.    BACKGROUND**

Torrez is a resident of Berkeley, California and was born on October 31, 1976. ECF No. 11, Administrative Record ("AR") 42. She has a longstanding reported history of depression, alcohol abuse, and suicide attempts. AR 582, 568, 487. In 2009, Torrez had an allergic reaction to shellfish, which was treated with Prednisone. Unbeknownst to her, she was allergic to that drug, and she experienced an induced psychosis as a result. AR 541, 916. On May 29, 2010 – the

---

[1] Although Berryhill is no longer Acting Commissioner of the agency, "[i]n accordance with the agency's Order of Succession, [she] continues to lead the Social Security Administration as [it] await[s] the nomination and confirmation of a Commissioner." Nancy A. Berryhill, Deputy Commissioner for Operations, https://www.ssa.gov/agency/commissioner.html. The position of Commissioner is currently vacant.

date she alleges she became disabled – she developed episodes of vomiting and confusion. AR 556; ECF No. 12 at 6-7. Her family took her to the emergency room, and she was admitted for inpatient care, where she remained until June 19, 2010. Id. Her doctors diagnosed her with limbic encephalitis, an acquired brain injury. Id. Since her diagnosis, Torrez alleges she has experienced "loss of cognitive functioning, memory loss, confusion, loss of problem solving ability, behavioral and personality changes, poor concentration, and social functioning difficulties." AR 25; see AR 42.

Torrez initially applied for Supplemental Security Income ("SSI") disability benefits and Supplemental Security Income Disability Insurance ("SSDI") on July 16, 2013, alleging an onset date of May 29, 2010. AR 42-43. The Commissioner denied her application on December 12, 2013. AR 84. Torrez requested reconsideration on December 23, 2013. On June 6, 2014, her claim was approved, but with an amended onset date of February 7, 2013. AR 88, 91-93. Torrez appealed the determination of the onset date and appeared before Administrative Law Judge ("ALJ") Richard Laverdure for a hearing on August 17, 2015. AR 877-934. The ALJ denied Torrez's appeal of her onset date on November 9, 2015. AR 79. After Torrez requested review of the ALJ's decision, the Appeals Council reviewed the decision and remanded the case to resolve issues pertaining to disability before the established onset date of February 7, 2013. AR 80-83. The ALJ held a second hearing on August 18, 2016, and on October 11, 2016, he once again denied Torrez's appeal of the onset date. AR 822-76, 35-36.

Pursuant to the Social Security Act, the ALJ followed the five-step sequential evaluation process in making his disability determination.[2] AR 21-23. At step one, the ALJ suggested that Torrez "may have engaged in substantial gainful activity since the alleged onset date" based on

---

[2] "Social Security regulations set out a five-step process for determining whether a claimant is disabled within the meaning of the Social Security Act." Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 20 C.F.R. § 404.1520). The process is sequential, meaning that if a claimant is found to be either disabled or not disabled at any step, there is no need to consider subsequent steps. Id. The five steps are: (1) "Is the claimant presently working in a substantially gainful activity?"; (2) "Is the claimant's impairment severe?"; (3) "Does the impairment 'meet or equal' one of a list of specific impairments described in the regulations?"; (4) "Is the claimant able to do any work that he or she has done in the past?"; and (5) "Is the claimant able to do any other work? . . . If the claimant is able to do other work, the Commissioner must establish that there are a significant number of jobs in the national economy that claimant can do." Id. at 1098-99.

rental income shown on a 2015 tax return and Torrez's testimony that she had been renting rooms in her house to two students since 2008. AR 23. At step two, the ALJ found that "[s]ince the alleged onset date of disability, May 29, 2010, [Torrez] has had the following severe impairments: limbic encephalitis, stable; cognitive/memory disorder, an adjustment or depressive disorder, and alcohol abuse in remission, with rare lapses." Id. At step three, the ALJ found that "[s]ince the alleged onset date of disability, May 29, 2010, [Torrez] has not had an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." AR 24. Specifically, the ALJ concluded that Torrez did not meet the criteria for Listings 12.02 (Neurocognitive Disorders) or 12.04 (Depressive, Bipolar and Related Issues). See AR 24-25. As required by 20 C.F.R. § 404.1520(e), the ALJ assessed and determined Torrez's residual functional capacity and found that "prior to February 7, 2013 . . . [Torrez] had the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: she was limited to simple, routine, repetitive work activity with no significant changes in routine, no high-pressure settings or required production rates; no more than casual interaction with the public; and no close cooperative work with co-workers." AR 25. At step four, the ALJ found that Torrez had no past relevant work. AR 34. Finally, at step five, the ALJ found that based on Torrez's residual functional capacity prior to the established onset date, "there were jobs that existed in significant numbers in the national economy that [Torrez] could have performed." Id. The ALJ ultimately found that Torrez was not disabled within the meaning of the Social Security Act at any time before the established onset date of February 7, 2013. AR 35.

Torrez filed a request for review of the ALJ's decision, but the Appeals Council denied her request on January 24, 2017. AR 8. On March 24, 2017, Torrez filed her appeal before this Court. ECF No. 1. The parties have filed cross-motions for summary judgment. ECF Nos. 12, 15.

## II. LEGAL STANDARD

A district court has jurisdiction to review final decisions of the Commissioner pursuant to 42 U.S.C. § 405(g).

3

"The Court may set aside a denial of benefits only if [it is] not supported by substantial evidence in the record or if it is based on legal error." Merrill ex rel. Merrill v. Apfel, 224 F.3d 1083, 1084-85 (9th Cir. 2000) (citation omitted). The court "review[s] the administrative record in its entirety to decide whether substantial evidence to support the ALJ's decision exists, weighing evidence that supports and evidence that detracts from the ALJ's determination." Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992) (citation omitted). "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995) (citation omitted). It is "more than a scintilla but less than a preponderance." Jamerson v. Chater, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted). "Where evidence exists to support more than one rational interpretation, the Court must defer to the decision of the ALJ." Drouin, 966 F.2d at 1258 (citation omitted). "[T]he key question is not whether there is substantial evidence that could support a finding of disability, but whether there is substantial evidence to support the Commissioner's actual finding that claimant is not disabled." Jamerson, 112 F.3d at 1067.

In evaluating a disability claim, the ALJ must "consider all of the available evidence, including [the claimant's] medical history, the medical signs and laboratory findings, and statements about [the claimant's] symptoms . . . ." 20 C.F.R. §§ 404.1529(a), 416.929(a). "[T]he ALJ must develop the record and interpret the medical evidence," Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003) (citation omitted), and is responsible for determining credibility, resolving conflicts in medical testimony, and resolving all other ambiguities, Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989) (citation omitted). However, the ALJ need not "discuss every piece of evidence" and, in particular, "is not required to discuss evidence that is neither significant nor probative." Howard, 341 F.3d at 1012 (citation omitted); see also Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (noting that "[a]n ALJ must explain why he has rejected uncontroverted medical evidence" but finding no error where the ALJ failed to discuss a psychiatric diagnosis that was controverted by other medical evidence).

4

1    Moreover, even if the ALJ erred, any error "is harmless where it is inconsequential to the ultimate nondisability determination. In other words, in each case we look at the record as a whole to determine whether the error alters the outcome of the case." Molina v. Astrue, 674 F.3d 1104, 1115 (9th Cir. 2012) (citations and internal quotation marks omitted). Thus, for example, "where the ALJ's error lies in a failure to properly discuss competent lay testimony favorable to the claimant, a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1056 (9th Cir. 2006).

## III. DISCUSSION

In her motion, Torrez advances five arguments to demonstrate that the ALJ's decision was in error: (1) the suggestion that she may have engaged in substantial gainful activity was not supported by the record; (2) the record did support a finding that her impairment met or medically equaled the criteria for Listings 12.02 or 12.04 in Appendix 1; (3) her statements concerning the extent of her limitations were consistent with the evidence in the medical record; (4) improper weight was given to the opinions of her treating and examining physicians; and (5) the assessment of her residual functional capacity was incorrect and failed to include all limitations. ECF No. 12 at 9-26.

### A. The ALJ's Step One Analysis

Torrez claims the "ALJ incorrectly extrapolated that [she] 'may have engaged [in] substantial gainful activity' between 2010 and 2013 based on information from [her] 2015 tax return and her testimony from the August 2016 hearing." ECF No. 12 at 9. The income on the 2015 tax return was rental revenue from the house that Torrez owns in Berkeley, California. AR 321. Torrez argues the income was entirely passive and that she "did not engage in any significant physical or mental activity in receiving the rental income . . . ." ECF No. 12 at 10. The ALJ justified his decision by stating, "[t]he claimant testified that she had been renting rooms in her house since 2008 to two students and had been collecting rents off and on since 1998 . . . ." AR 23. As the 2015 tax return reported both active and passive rental income, the ALJ found this

suggested the presence of substantial gainful activity. See id.

"Substantial work activity is work activity that involves doing significant physical or mental activities." 20 C.F.R. § 404.1572(a). "[W]ork may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before." Id. "Work activity is gainful if it is the kind of work usually done for pay or profit, whether or not a profit is realized." 20 C.F.R. § 404.1572(b).

Nothing in the record shows that Torrez engaged in "significant physical or mental activities" in connection with the rental of rooms in her house. See 20 C.F.R. § 404.1572(a). As the ALJ himself noted, the tax return, which formed the basis of his opinion, was "somewhat internally contradictory and confusing" because it reported both active and passive rental income. See AR 23. Torrez admitted she prepared her own taxes and may have done them incorrectly. AR 828. Moreover, Torrez reported a property management fee expense, which would indicate that she was not actively involved in managing the property. See AR 321. To the extent the ALJ's finding that Torrez "may have" engaged in substantial gainful activity implied that she did in fact engage in such activity, the finding was erroneous. However, as the ALJ did not make the disability determination at this step and did not base his final decision upon this finding, the Court concludes any error was harmless. See Molina, 674 F.3d at 1115 (internal quotation marks omitted) ("[A]n ALJ's error is harmless where it is inconsequential to the ultimate nondisability determination."); AR 23, 25-35.

### B. The ALJ's Step Two Analysis

The ALJ found that Torrez had severe impairments that "significantly limit[ed] her ability to perform basic work activities . . . ." AR 23. Accordingly, the ALJ proceeded to step three of the evaluation process. See AR 24. Torrez claims no error with this step.

### C. The ALJ's Step Three Analysis

The ALJ found that Torrez did not have an impairment or combination of impairments that met or medically equaled the severity of any listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Id. He arrived at this conclusion: (1) by finding that "[w]ith respect to her ability to maintain concentration, persistence and pace . . . the evidence [did] not indicate that [Torrez]

would not be able to sustain at least simple, routine, repetitive work activity"; and (2) by relying on the opinions of the State agency consultants and the testifying medical experts, Dr. Nancy Winfrey and Dr. Donna M. Veraldi. See AR 24-25. Torrez argues the ALJ would have found that she met the requirements of Listings 12.02 and/or 12.04 had he properly evaluated her statements and afforded appropriate weight to the opinions of her treating and examining physicians. See ECF No. 12 at 24.

For the reasons stated below, the Court finds that the ALJ improperly discredited Torrez's statements concerning the severity of her impairments and incorrectly rejected the opinion of treating neurologist, Dr. Matthew Arnold. Both of these actions constituted legal error, and the ALJ's rejection of Arnold's opinion was not harmless. Accordingly, the Court remands for additional investigation. See Ambriz v. Colvin, No. 12-CV-05486-JST, 2013 WL 6441810, at *8 (N.D. Cal. Dec. 8, 2013) (citing INS v. Ventura, 537 U.S. 12, 16 (2002)) (noting that if a court finds error in an administrative determination, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation").

### 1. Credibility Determination

Torrez argues that the ALJ's reasons for rejecting her statements concerning the severity of her symptoms were not clear and convincing. ECF No. 12 at 11.

To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must first determine whether the claimant has presented objective medical evidence of an underlying impairment that "could reasonably be expected to produce the pain or other symptoms alleged." See Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (en banc) (citation omitted). "If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" Garrison v. Colvin, 759 F.3d 995, 1014-15 (9th Cir. 2014) (quoting Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996)).[3] "[G]eneral findings are an insufficient basis to support an adverse credibility

---

[3] The Commissioner's suggestion that the "clear and convincing" standard does not apply, ECF No. 15 at 11 n.4, "lacks any support in precedent and must be rejected." Garrison, 759 F.3d at

7

determination." Holohan v. Massanari, 246 F.3d 1195, 1208 (9th Cir. 2001) (citation omitted). Rather, "the ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." Id. (citation omitted). Moreover, the ALJ's "findings, properly supported by the record, must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not 'arbitrarily discredit a claimant's testimony regarding pain.'" Bunnel, 947 F.2d at 345-46 (quoting Elam v. R.R. Ret. Bd., 921 F.2d 1210, 1215 (11th Cir. 1991)). However, where an ALJ's credibility determination is supported by substantial evidence, the court's "role is not to second-guess that decision." Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 600 (9th Cir. 1999) (internal citation and quotation omitted).

Here, the ALJ found that Torrez's "medically determinable impairments reasonably could be expected to cause some alleged symptoms." AR 26. Thus, the first step of the credibility analysis was satisfied. See Bunnell, 947 F.2d at 344. At step two, the ALJ failed to mention any "evidence of malingering," but nonetheless found that Torrez's "statements concerning the intensity, persistence[,] and limiting effects of [her] symptoms are not fully supported prior to February 7, 2013, for the reasons explained in this decision." See Garrison, 759 F.3d 995, 1014-15 (citation omitted); AR 26. The ALJ then discussed the medical opinion evidence, the objective medical evidence, and his weighing of the medical opinion evidence. See AR 26-33. After his analysis, the ALJ concluded "that from May 29, 2010, until February 6, 2013, [Torrez's] statements about the severity of her symptoms are not consistent with the medical evidence." AR 33. Nowhere in his lengthy discussion, however, did the ALJ specifically identify the testimony he found to be not credible. See AR 26-33; Holohan, 246 F.3d at 1208. This was legal error. See Brown-Hunter v. Colvin, 806 F.3d 487, 494 (9th Cir. 2015) ("Because the ALJ failed to identify the testimony she found not credible, she did not link that testimony to the particular parts of the record supporting her non-credibility determination. This was legal error.") (citation omitted). The ALJ did not provide sufficiently specific reasons to allow this Court to conclude he did not

---

1015 n.18; see also Burrell v. Colvin, 775 F.3d 1133, 1137 (9th Cir. 2014).

8

arbitrarily reject Torrez's subjective testimony regarding her symptoms. See Bunnel, 947 F.2d at 345-46.

The Court therefore grants Torrez's motion for summary judgment on this issue. On remand, the ALJ must reevaluate the claimant's credibility. If he rejects Torrez's testimony about the severity of her symptoms, he shall "specifically identify the testimony [he] . . . finds not to be credible," and provide "specific, clear and convincing reasons" to explain his determination. Holohan, 246 F.3d at 1208; Garrison, 759 F.3d at 1014-15.

### 2. Evaluation of the Medical Opinion Evidence

Having concluded that the ALJ's adverse credibility determination at step three constituted legal error, the Court now examines whether the ALJ's weighing of the medical opinion evidence at step three was supported by substantial evidence.

Torrez argues that: (1) the ALJ failed to provide specific and legitimate reasons, supported by substantial evidence, to reject the opinion of treating neurologist, Arnold; (2) the ALJ arbitrarily and inconsistently gave weight to the opinion of treating therapist, Ms. Anne Sagewood; (3) the ALJ erred by relying primarily on the opinions of non-examining medical sources, Winfrey, Veraldi, and the State agency consultants; and (4) the ALJ improperly ignored the opinions of treating and examining sources, Dr. Linda Frankel and Dr. Lorraine Schnurr. ECF No. 12 at 19-23.

The Ninth Circuit distinguishes between the opinions of three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995) (footnote omitted). In general, a treating physician's opinion is afforded greater weight because "he is employed to cure and has a greater opportunity to know and observe the patient as an individual." Magallanes, 881 F.2d at 751 (citation omitted). "The treating physician's opinion is not, however, necessarily conclusive as to either a physical condition or the ultimate issue of disability." Id. (citation omitted). An ALJ may reject the uncontroverted opinion of a claimant's physician if he presents clear and convincing reasons for doing so. Id. (citation omitted). Where physicians'

9

opinions are in conflict, an ALJ may reject the opinion of the treating physician if he "make[s] findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." Id. (citation omitted); see also 20 C.F.R. § 404.1527(d)(2) ("Although we consider opinions from medical sources on issues such as . . . your residual functional capacity . . . , or the application of vocational factors, the final responsibility for deciding these issues is reserved to the Commissioner."). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Magallanes, 881 F.2d at 751 (internal quotation marks and citation omitted). "Where [the] evidence is susceptible to more than one rational interpretation, the decision of the ALJ must be upheld." Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995).

For the reasons stated below, the Court finds that the ALJ properly discounted the opinion of treating therapist, Sagewood, but erroneously rejected the opinion of treating neurologist, Arnold. As the Court finds reversible error in the treatment of Arnold's opinion, the Court need not consider the ALJ's weighing of the remaining medical sources. The Court grants Torrez's motion for summary judgment with respect to Arnold's opinion and grants the Commissioner's motion for summary judgment with respect to Sagewood's opinion.

### a. Dr. Arnold

The ALJ rejected a letter written by treating neurologist Arnold on March 10, 2016 because "it offer[ed] no insight into [Torrez's] ability prior to February 2013 . . . ." AR 31. In this letter, Arnold noted that he had followed Torrez since her limbic encephalitis episode, which "left her with significant difficulty with short term memory, as well as difficulty interpreting emotions." AR 725. The letter also stated that Torrez's impairment "leads to her having to take copious notes, and despite this, her memory of details is not 100%." Id. The ALJ found that although the 2016 letter "may be seen to support disability now," it could be given no evidentiary weight for the closed period. See AR 31.

The ALJ's decision to accord no weight to the opinion in Arnold's letter was not supported by specific and legitimate reasons "based on substantial evidence in the record." See Magallanes,

881 F.2d at 751. Arnold examined Torrez on multiple occasions during the closed period and his findings are consistent with her alleged symptoms. See AR 552-53, 547-48, 544-45, 535-36, 42. Arnold was the primary treating neurologist and also the only medical source to witness Torrez's symptoms consistently since she first suffered her brain injury in 2010. See AR 552-53, 547-48, 544-45, 535-36.

The Commissioner argues that the ALJ permissibly rejected Arnold's letter because "it offered meager insight into [Torrez's] ability prior to February 2013" and also failed to "provide an estimate or description of [Torrez's] ability." See ECF No. 15 at 18. This argument ignores the record as a whole. Every report from Arnold speaks to the severity of Torrez's memory retrieval difficulties. See AR 725, 552-53, 547-48, 544-45, 535-36. On August 23, 2010, Arnold found that Torrez had shown gradual improvement, but still had "significant problems retrieving information." AR 553. On November 24, 2010, January 5, 2011, and May 25, 2011, Arnold again examined Torrez and repeatedly concluded that, although her condition had improved, Torrez continued to have "severe memory retrieval difficulties." AR 547-48, 544-45, 535-36. Additionally, after his May 2011 examination, Arnold recommended that future scheduling be done through Torrez's mother because Torrez's "memory and cognitive ability with executive function remains quite poor." AR 536. Because the opinion in the letter is consistent with Arnold's treatment notes, the ALJ's finding that the letter "provides no insight" into Torrez's impairment during the closed period is not supported by substantial evidence.[4] See AR 725, 552-53, 547-48, 544-45, 535-36, 31; Flaten, 44 F.3d at 1457. Had the ALJ afforded Arnold's opinion the proper weight, the ALJ could have reasonably concluded that Torrez was disabled on the basis of his numerous statements concerning her poor short-term memory and cognitive functioning

---

[4] Arnold also completed a mental health questionnaire on October 14, 2016, which detailed the extent of Torrez's limitations and listed June 2010 as the approximate onset date of her impairment. See AR 814-19. Although this report was submitted after the ALJ issued his decision and before the Appeals Council issued its decision, the report's consistency with the rest of Arnold's reports further supports the Court's finding that the ALJ's rejection of Arnold's opinion was not supported by substantial evidence. See id.; ECF No. 12 at 15; Brewes v. Comm'r of Soc. Sec. Admin., 682 F.3d 1157, 1163 (9th Cir. 2012) ("[W]e have routinely considered evidence submitted for the first time to the Appeals Council to determine whether, in light of the record as a whole, the ALJ's decision was supported by substantial evidence.") (citation omitted).

1    issues.  See AR 725, 548, 545, 536.  Arnold's opinion was entitled to "substantial weight" in the

2    ALJ's disability determination and the Court finds its improper rejection was not harmless error.

3    See Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1228 (9th Cir. 2009) ("A treating

4    physician's opinion is entitled to 'substantial weight.'"); Hill v. Astrue, 698 F.3d 1153, 1160 (9th

5    Cir. 2012) (holding that when an ALJ disregards a medical opinion "based on objective medical

6    evidence" without providing specific and legitimate reasons, the ALJ commits error that is "not

7    harmless"); see also Smolen, 80 F.3d at 1288 (holding that the erroneous rejection of a treating

8    physician's opinion constituted reversible error) (citation omitted).

### b.     Ms. Sagewood

The ALJ accorded some weight to the opinion of treating therapist, Sagewood, to the extent it corresponded with the "State agency conclusion of disability as of February 2013" and helped the ALJ formulate the "residual functional capacity that limited [Torrez] to simple work requiring demonstration, little co-worker interaction, and few, if any, changes in routine."  AR 28-29.  However, to the extent Sagewood's opinion suggested greater limitations during the closed period, the ALJ assigned it no weight based on a lack of corroborative treatment notes, the relatively short three month duration of her examination, a lack of corroborating treatment notes from other sources during that period, and the fact that Torrez had worked for part of 2012.  AR 28.

Sagewood is a therapist, and although she is not entitled to the same deference as "an acceptable medical source," her opinion as an "other source" may be considered to show the severity of an impairment and how it affected Torrez's ability to work.  See AR 491; 20 C.F.R. §§ 416.913 (2013) (amended 2017), 404.1513 (2013) (amended 2017); Molina, 674 F.3d at 1111 ("Other sources" are not entitled to the same deference as "acceptable medical sources.") (citation omitted).  An ALJ may discount the opinion of an "other source" as long as he gives "germane" reasons for doing so.  Molina, 674 F.3d at 1111 (citation omitted).

The Court finds that the ALJ provided germane reasons to discount Sagewood's opinion, such as the lack of corroborating treatment notes from other sources during the relevant period, the relatively short period of time she saw .  See AR 28.  While the Court agrees that the ALJ's

12

assignment of weight with respect to Sagewood's opinion was inconsistent, any error was harmless, because the ALJ provided germane reasons to discount her opinion.[5] Id. at 1115 (Any error "is harmless where it is inconsequential to the ultimate nondisability determination.") (citations and internal quotation marks omitted).

### D. Remand

Generally, when the court finds error in an administrative determination, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Ventura, 537 U.S. at 16 (citation omitted). A court, however, may credit evidence and remand for an award of benefits where "(1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited." See Smolen, 80 F.3d at 1292 (citation omitted).

Here, remand for additional proceedings is appropriate because several issues must be resolved before a determination of disability can be made. Specifically, the ALJ, on remand, must conduct a new step three analysis and residual functional capacity assessment that incorporates Arnold's opinion. This reevaluation must also consider Torrez's statements regarding the severity of her impairment if the ALJ cannot provide specific, clear, and convincing reasons to exclude them. If the ALJ chooses to find Torrez's statements not credible, he must identify the statements with sufficient specificity to allow a reviewing court to evaluate his determination.

## CONCLUSION

For the foregoing reasons, Torrez's motion for summary judgment is granted in part and denied in part. The Commissioner's cross-motion for summary judgment is also granted in part

///

---

[5] The Court notes that the ALJ selectively assigned weight to Sagewood's 2012 questionnaire and 2013 letter. See AR 28-29. The Court finds this approach was illogical and inconsistent. Sagewood's letter noted that little had changed since her 2012 assessment and that most of what was written in her questionnaire remained pertinent. AR 559. Therefore, it was irrational to assign her letter "some weight" while simultaneously discounting the questionnaire upon which it was based. See AR 28-29.

13

/ / /

and denied in part. This action is hereby remanded to the ALJ for further proceedings consistent with this order.

**IT IS SO ORDERED.**

Dated: March 26, 2018

_____
JON S. TIGAR
United States District Judge